1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13

BRIDGELUX, INC.,

14

Plaintiff,                          No. C 06-6495 PJH

15

v.                                  **ORDER GRANTING DEFENDANTS'**

16                                                  **MOTION TO DISMISS IN PART AND**
CREE, INC., et al.,                 **DENYING IT IN PART**

17

Defendants.

18 _____/

19        Before the court is defendants' motion to dismiss the above-entitled action.  Having

20 read the parties' papers and carefully considered their arguments, and good cause

21 appearing, the court hereby GRANTS the motion in part and DENIES it in part.

22                                    **BACKGROUND**

23        Plaintiff BridgeLux, Inc. ("BridgeLux"), a California corporation based in Sunnyvale,

24 California, manufactures LED (light-emitting diode) chips.  Defendant Cree, Inc. ("Cree"), a

25 North Carolina corporation headquartered in Durham, North Carolina, manufactures and

26 sells various semiconductor products, including LEDs, which it sells to lighting companies.

27 Defendant Cree Lighting Company was formerly a subsidiary of Cree but was merged into

28 its parent company in 2003 and no longer exists as a separate entity.  Defendant Trustees

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

of Boston University ("BU") is the governing body of Boston University, a non-profit educational institution located in Boston, Massachusetts.

Cree owns U.S. Patent Nos. 6,657,236 ("the '236 patent"); 6,614,056 ("the '056 patent"); 6,885,036 ("the '036 patent"); and 6,600,175 ("the '175 patent"). Boston University owns, and Cree exclusively licenses, U.S. Patent Nos. 5,686,738 ("the '738 patent"); and 6,953,703 ("the '703 patent"). All six patents relate to LED devices and materials. BridgeLux, Cree, and BU are presently involved in litigation involving some of these patents, in three separate judicial districts.

On September 11, 2006, Cree and BU filed suit against BridgeLux in the Middle District of North Carolina, alleging that BridgeLux had infringed Cree's '236 patent and BU's '738 patent (Cree v. BridgeLux, Case No. 06-cv-0761-NCT-RAE (M.D.N.C.)).

On October 17, 2006, BridgeLux did three things. First, it filed a motion to dismiss the North Carolina case for lack of personal jurisdiction and improper venue. Second, it filed suit against Cree in the Eastern District of Texas, alleging that Cree had infringed U.S. Patent No. 6,869,812 ("the '812 patent"), owned by BridgeLux (BridgeLux v. Cree, Case No. 06-cv-0240-RHC (E.D. Tex.)). Third, it filed the present action, seeking a declaratory judgment of noninfringement and invalidity as to the '236 and '738 patents, and seeking a declaratory judgment of noninfringement as to the '175 and '703 patents.

In the North Carolina case, the court granted defendants' motion for additional time to respond to the motion to dismiss, and also granted their request for leave to conduct jurisdictional discovery. The motion to dismiss was fully briefed as of April 13, 2007. On July 5, 2007, Magistrate Judge Russell A. Eliason issued a report and recommendation, recommending that the motion be granted.

In the Texas case, Cree and BU filed an answer and counterclaims, seeking a judicial declaration of non-infringement, invalidity, and unenforceability as to the '812 patent (first through third counterclaims); and a judicial declaration of infringement as to the '236, '738, '056, and '036 patents (fourth counterclaim).

Shortly after filing their answer, defendants informally requested BridgeLux to agree

2

to consolidate all the pending actions in the Eastern District of Texas.  BridgeLux rejected

this request.  On December 4, 2004, defendants' counsel sent BridgeLux a letter on behalf

of defendants, formally requesting that BridgeLux consider consolidating the three actions

into the Texas case, to "serve the convenience of the parties" and "promote the just and

efficient conduct issues involving the various patents."  Counsel for BridgeLux declined,

stating that "we see no recognizable efficiencies achieved by consolidating the parties'

claims into a single action in Texas."

On December 28, 2006, BridgeLux moved in the Texas action for an order severing

the fourth counterclaim.  BridgeLux argued that the '238, '738, '056, and '036 patents were

related to each other, and were distinct from and BridgeLux's '812 patent, the subject of the

complaint.  On January 16, 2007, Cree filed a motion for summary judgment of invalidity of

the '812 patent.  That motion has been fully briefed, but a decision has not yet been issued.


On February 5, 2007, the Texas court granted the motion to sever the fourth

counterclaim in part and denied it in part, finding that the claims relating to the '236 and

'738 patents were first filed in North Carolina, second filed in California, and third filed in

Texas; and that the claims relating to the '056 and '036 patents were first filed in Texas and

second filed in California.

The court severed the counterclaim as to the '236 and '738 patents, and dismissed

that portion of the counterclaim, "to be dealt with by the court in which a suit involving these

patents was first filed."  At present, that court is the Middle District of North Carolina, where,

however, BridgeLux claims it is not subject to suit.  The court denied the motion to sever

the counterclaim as to the '056 and '036 patents, on the basis that the claims regarding

those patents were first filed in Texas.

In the present case, BridgeLux amended the complaint on November 28, 2006,

adding counts for declaratory judgment of noninfringement as to the '056 and '036 patents.

Defendants filed a motion to dismiss the entire action, to which BridgeLux filed an

opposition.  BridgeLux also requested leave to conduct jurisdictional discovery in order to

1  oppose defendants' motion to dismiss BU for lack of personal jurisdiction, and to oppose

2  the motion to dismiss the seventh and eighth causes of action for lack of subject matter

3  jurisdiction.  The court denied that request in an order issued on February 15, 2007.

**DISCUSSION**

4

5  A.    Legal Standards

6        1.    Subject Matter Jurisdiction

7        Subject matter jurisdiction is fundamental and cannot be waived.  Billingsly v. C.I.R.,

8  868 F.2d 1081, 1085 (9th Cir. 1989).  Federal courts can adjudicate only those cases which

9  the Constitution and Congress authorize them to adjudicate – those involving diversity of

10 citizenship or a federal question, or those to which the United States is a party.  Kokkonen

11 v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  The burden of establishing

12 that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction.

13 Id.; see also Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir.

14 2001).

15       2.    Declaratory Judgment Act

16       The Declaratory Judgment Act authorizes the court to "declare the rights and other

17 legal relations of any interested party seeking such declaration" when there is an "actual

18 controversy."  28 U.S.C. § 2201(a).  In patent cases, declaratory judgment is usually sought

19 by a party who, rather than waiting to be sued for patent infringement, seeks a legally

20 binding affirmation that it is not infringing on another party's patent.  See, e.g., BP Chems.

21 Ltd. v. Union Carbide Corp., 4 F.3d 975 (Fed. Cir. 1993).  Federal Circuit law controls such

22 actions.  Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed. Cir. 1992).

23       The sole requirement for federal court jurisdiction under Article III of the U.S.

24 Constitution and the Declaratory Judgment Act is an "actual controversy."  Teva Pharms.

25 USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1338 (Fed. Cir. 2007) ("Novartis")

26 (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937)).  Whether an actual

27 controversy exists under the Declaratory Judgment Act in a patent case is a question of law

28 for the court to decide.  Id. at 1336.

United States District Court

For the Northern District of California

4

1    The Federal Circuit formerly employed a two-part test for determining the existence

2  of an actual controversy – the defendant's conduct must have created in the plaintiff an

3  objectively reasonable apprehension that the defendant will initiate suit if the plaintiff

4  continues the allegedly infringing activity, and the plaintiff must either have produced the

5  infringing device or have prepared to produce it.  See Teva Pharms. USA, Inc. v. Pfizer,

6  Inc., 395 F.3d 1324, 1332-33 (Fed. Cir. 2005).

7    However, the Federal Circuit has now discarded that standard in the wake of the

8  decision in MedImmune, Inc. v. Genentech, Inc., __ U.S. __, 127 S.Ct. 764 (2007), a patent

9  licensing dispute.  In that case, the Supreme Court stated, in dicta, that the Federal

10  Circuit's two-prong "reasonable apprehension of imminent suit" test conflicted with and

11  "would contradict" several cases in which the Supreme Court had found that a declaratory

12  judgment plaintiff had a justiciable controversy.  See id., 127 S.Ct. at 774 n.11; see also

13  Novartis, 482 F.3d at 1340; SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372,

14  1379 (Fed. Cir. 2007).  The Court stated that the "actual controversy" requirement of the

15  Declaratory Judgment Act demands only

16
17    that the dispute be definite and concrete, touching the legal relations of
     parties having adverse legal interests; that it be real and substantial and
18   admit of specific relief through a decree of a conclusive character, as
     distinguished from an opinion advising what the law would be upon a
19   hypothetical state of facts. . . . The question in each case is whether the facts
     alleged, under all the circumstances, show that there is a substantial
20   controversy, between parties having adverse legal interests, of sufficient
     immediacy and reality to warrant the issuance of a declaratory judgment.

21  MedImmune, 127 S.Ct. at 771-72 (citations and quotations omitted).

22    In response to MedImmune, the Federal Circuit has adopted the "all circumstances"

23  test in place of the discredited "reasonable apprehension of imminent suit" test.  Under the

24  MedImmune approach, a declaratory judgment plaintiff is required only to satisfy Article III,

25  which includes standing and ripeness, by showing, under "all the circumstances," an actual

26  or imminent injury caused by the defendant that can be redressed by judicial relief, and that

27  is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

28  Novartis, 482 F.3d at 1338 (quoting MedImmune, 127 U.S. at 771).

5

United States District Court

For the Northern District of California

B.     Defendants' Motion to Dismiss

Defendants make two main arguments.  First, they assert that the first, second, third, fourth, seventh, and eighth causes of action for declaratory relief should be dismissed under the first-to-file rule because those claims were at issue in previously-filed lawsuits at the time this action was filed, and because BridgeLux has improperly used the Declaratory Judgment Act to forum-shop.

Second, they argue that the court lacks subject matter jurisdiction over the fifth and sixth causes of action for declaratory relief, because no actual and justiciable controversy existed between BridgeLux and defendants concerning the '175 and '703 patents at the time that BridgeLux filed this action.[1]

1.     First, second, third, fourth, seventh, and eighth causes of action

BridgeLux's first and second causes of action seek a judicial declaration of non-infringement and invalidity of the '236 patent.  The third and fourth causes of action seek a declaration of non-infringement and invalidity of the '738 patent.  The seventh cause of action seeks a declaration of non-infringement of the '056 patent.  The eighth cause of action seeks a declaration of non-infringement of the '036 patent.

Defendants argue that the court should decline to exercise jurisdiction over these six causes of action because they are duplicative of Cree's first-filed claims in North Carolina and Texas.  The "first-to-file" rule is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.  Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-5 (9th Cir. 1982).  The Federal Circuit applies the general rule that "'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances."  Kahn v. Gen'l Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989) (citations omitted).

---

[1]  Defendants originally also moved for an order dismissing BU for lack of personal jurisdiction, but BU subsequently consented to personal jurisdiction in this district for purposes of the present litigation only.

United States District Court

For the Northern District of California

1
2
3

> We apply the general rule favoring the forum of the first-filed case unless considerations of judicial and litigant economy, and the just and effective dispositions of disputes, requires otherwise.  Exceptions are not rare, but we have explained that there must be sound reason that would make it unjust or inefficient to continue the first-filed action.

4     Electronics for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (citation and

5     quotation omitted).

6         In looking at this question, the court may consider whether a party filed a declaratory

7     judgment action in an attempt to preempt another's infringement suit.  Other factors include

8     the convenience and availability of witnesses; the absence of jurisdiction over all necessary

9     or desirable parties; and the possibility of consolidation with related litigation.  Id. at 1347-

10    48.

11        The Federal Circuit has not provided much additional guidance with regard to the

12    application of the first-to-file rule.  Courts in the Ninth Circuit look at three threshold factors:

13    the chronology of the two actions; the similarity of the parties, and the similarity of the

14    issues.  Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625-26 (9th Cir. 1991);

15    Pacesetter, 678 F.2d at 95; Z-Line Designs, Inc. v. Bell'O Int'l, LLC, 218 F.R.D. 663, 665

16    (N.D. Cal. 2003).  If the first-to-file rule does apply to a suit, the court in which the second

17    suit was filed may transfer, stay or dismiss the proceeding in order to allow the court in

18    which the first suit was filed to decide whether to try the case.  Alltrade, 946 F.2d at 625.

19    Defendants contend that all three of the above-cited factors are met with regard to the '236

20    and '738 patents, and also with regard to the '056 and '036 patents.

21        The court finds that the motion must be DENIED as to the '236 and '738 patents,

22    and GRANTED as to the '056 and '036 patents.  It is undisputed that the case involving the

23    '236 and '738 patents was filed first in North Carolina, then in California; and that the case

24    involving the '056 and '036 patents was filed first in Texas, then in California.[2]  As it

25    appears likely that the North Carolina court will dismiss the entire action pending before it

26    for lack of personal jurisdiction over BridgeLux, this court will retain jurisdiction over the first

27    _____

28        [2] Some months ago, the parties so agreed in the Texas action.  See Order on Plaintiff's Motion to Sever, BridgeLux v. Cree, 06-CV-240 (E.D. Tex., Feb. 5, 2007).

United States District Court

For the Northern District of California

through fourth causes of action.[3]  However, because the Texas court has already ruled that the claims regarding the '056 and '036 patents should remain there, this court will dismiss the seventh and eighth causes of action under the first-to-file rule.

2.     Fifth and sixth causes of action

Defendants argue that the fifth and sixth causes of action, seeking a declaration of non-infringement as to the '175 and '703 patents, should be dismissed for lack of subject matter jurisdiction because BridgeLux cannot show the existence of an actual controversy regarding those patents.

As discussed above, under the MedImmune test, a declaratory judgment plaintiff is required to show an actual and imminent injury caused by the defendant that can be redressed by judicial relief, and that is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Novartis, 482 F.3d at 1338 (quoting MedImmune, 127 U.S. at 771).

The MedImmune decision was issued on January 9, 2007, and the hearing on the present motion occurred on January 31, 2007.  In general, the arguments made by the parties in their briefs applied the old, pre-MedImmune Federal Circuit standard for determining subject matter jurisdiction over a declaratory judgment claim in a patent action. At the hearing, the court asked for supplemental briefing on the question of the effect, if any, of the MedImmune decision on the issues raised by defendants' motion.

Defendants asserted that because the specific holding in MedImmune (a patent licensing case) has no application to the facts here, and because the Supreme Court's comments regarding the Federal Circuit's "reasonable apprehension of imminent suit" test were dicta, the decision should be read narrowly, and this court should not assume that the Court had rejected the Federal Circuit's long-standing test.  BridgeLux, on the other hand, argued that the MedImmune test should be broadly applied, but also asserted that in any

---

[3]  The court will reconsider this decision if the North Carolina court does not dismiss for lack of jurisdiction over BridgeLux, as the claims regarding the '236 and '738 patents were first filed in that district.

8

United States District Court

For the Northern District of California

1   event, BridgeLux could meet either test.

2       The parties completed their supplemental briefing in late February 2007.

3   Approximately a month later, the Federal Circuit issued its decisions in <u>SanDisk</u> and

4   <u>Novartis</u>, in which it concluded that the Supreme Court had essentially rejected the

5   "reasonable apprehension of imminent suit" test for determining declaratory judgment

6   jurisdiction in patent cases, and that the broader general rules governing declaratory

7   judgment jurisdiction also apply in patent cases.

8       BridgeLux argues that there is an actual and imminent injury that justified the filing of

9   the present action for declaratory relief as to the '175 and '703 patents.  Based on the

10  Declaration of its Chief Executive Officer Robert C. Walker, BridgeLux asserts that it has an

11  Asian-based customer (identified only as the "customer") who purchases LED chips from

12  BridgeLux for use in its high-power LED products.  BridgeLux is a major supplier of LED

13  chips to this customer.  Walker states that on April 23-27, 2006, the customer sponsored a

14  booth at one of the major annual lighting trade shows, the Light & Building Frankfort 2006,

15  in Germany.  At that trade show, the customer displayed lighting products that incorporated

16  BridgeLux's LED chips.

17      Walker asserts, on information and belief, that unidentified Cree management

18  personnel approached the same Asian-based customer's booth at the trade show, and

19  advised the customer's representative that if the customer was not using Cree's LED chips

20  in its lighting products, then it was infringing certain of Cree's LED patents.  Walker

21  believes that the products to which the Cree representative directed its allegations of

22  infringement all incorporated BridgeLux LED chips, and not Cree LEDs.  However, Walker

23  does not assert that the Cree representative indicated that he knew the products

24  incorporated BridgeLux LED chips, or that the Cree representative ever mentioned

25  BridgeLux.

26      Subsequently, in June 2006, the customer allegedly told Walker that Cree had sent it

27  a warning letter asserting four U.S. patents directed to LED technologies and threatening

28  that the customer's lighting products infringed those patents.  According to Walker, the

United States District Court

For the Northern District of California

1   customer stated that Cree's letter was directed at the customer's products that incorporate

2   BridgeLux's LED chips, and that the letter specifically named Cree's '738, '236, '703, and

3   '175 patents.  Upon receipt of the letter, the customer contacted BridgeLux and requested

4   a meeting to discuss the patents and BridgeLux's position regarding potential infringement.

5       The customer did not provide BridgeLux with a copy of the letter, and BridgeLux

6   does not have a copy of the letter.  Nevertheless, based on the customer's report of the

7   comments by the Cree representative at the April 2005 trade show, and also based on the

8   June 2006 letter, Walker asserts that BridgeLux became concerned that Cree might

9   eventually assert those four patents against BridgeLux.

10      In September 2006, Cree did file suit in the Middle District of North Carolina,

11  asserting infringement as to two of the four patents (the '738 and '236 patents) that had

12  allegedly been identified in the June 2006 letter to the Asian-based customer.  Thus,

13  according to Walker, BridgeLux reasonably believed that another lawsuit asserting the

14  other two patents (the '703 and '175 patents) was imminent.

15      Walker states further that he is informed that Cree has made "comments" to other

16  customers or potential customers regarding the competition that BridgeLux is presenting to

17  Cree in the LED market.  According to Walker, a BridgeLux sales manager was told by a

18  potential customer that in 2006, Cree management personnel told the potential customer

19  that Cree considered BridgeLux to be a major supplier of InGaN power LEDs in the market,

20  and that Cree's sales performance on certain of its products was affected by competition

21  presented by BridgeLux's LED chips.

22      Walker also claims that "some current and potential customers" have told BridgeLux

23  that they are apprehensive of using BridgeLux LEDs in their lighting products because they

24  fear being sued by Cree.  Walker asserts that this has caused BridgeLux to be concerned

25  and to feel threatened that Cree will assert its LED patents directly against BridgeLux.

26      In 2004, Walker served as the co-chair of Blue 2004, a lighting conference held in

27  Taiwan and attended by major participants in the lighting field including BridgeLux

28  customers and potential customers who make and sell lighting products that use LED

United States District Court

For the Northern District of California

1   chips.  Walker states that at that conference, a Cree senior manager (unidentified)

2   addressed the attendees, and projected a copy of Cree's '175 patent during his

3   presentation.

4        According to Walker, the Cree manager discussed various products (tennis shoes,

5   flashlights) which he had purchased in North Carolina and which incorporated LEDs, and

6   stated his opinion that the products infringed Cree's '175 patent because they did not use

7   the Cree LED die and did not have a license with Cree.  The Cree manager stated that the

8   '175 patent had broad coverage, and indicated that Cree would bring lawsuits to enforce its

9   patent.

10        Walker states further that he is aware the Cree and BU have in the past filed patent

11   infringement lawsuits.  He also attaches to his declaration copies of Cree press releases

12   dated May 19, 2005, December 8, 2005, May 9, 2006, and September 28, 2006,

13   announcing Cree's licensing of its '175 patent to various companies located in Japan, Hong

14   Kong, Korea, and Taiwan.  Walker asserts that these press releases promote the '175

15   patent and explain Cree's intention to defend its technology.

16        Defendants, on the other hand, argue that at the time the present action was filed,

17   no actual controversy existed between the parties regarding the '175 and '703 patents, and

18   contend that BridgeLux has not met its burden of showing that an actual controversy in fact

19   existed.  Based on the declaration of John F. Imbergamo, BU's Senior Associate Vice

20   President of Financial Affairs, defendants contend that no employee of BU has ever told

21   BridgeLux or a third party that BridgeLux has infringed the '703 patent, and that no

22   employee of BU has ever threatened BridgeLux with suit on the '703 patent.  BridgeLux

23   does not dispute this claim.

24        Defendants assert further, based on the declaration of Scott S. Schwab, Vice-

25   President and General Manager of Optoelectronics at Cree, that while Cree has offered to

26   license the '703 patent on behalf of BU to other companies, neither Cree nor BU has ever

27   brought suit on the '703 patent against any company.  Schwab also claims, on information

28   and belief, that no employee of Cree has ever told BridgeLux or a third party that BridgeLux

United States District Court

For the Northern District of California

1   has infringed either the '703 patent or the '175 patent, and that no employee of Cree has

2   ever threatened BridgeLux with suit on either of those patents.

3        Defendants contend that BridgeLux has not met its burden of showing the existence

4   of an actual controversy regarding the '175 or '703 patents at the time this action was filed,

5   because the evidence on which BridgeLux relies is inadmissible.  Defendants assert that

6   the only evidence provided is the declaration of Robert Walker, BridgeLux's CEO.

7   Defendants argue that the Walker declaration is based primarily on inadmissible hearsay

8   and rumors, noting in particular that the assertions concerning Cree's supposed allegations

9   of infringement are based on several layers of hearsay.

10       For example, defendants point to Walker's statement that an unidentified Cree

11  representative allegedly approached an unidentified Asian-based customer of BridgeLux at

12  an April 2004 trade show in Germany, and advised this customer that if it was not using

13  Cree LED chips, it was infringing certain of Cree's patents.   Similarly, defendants note

14  Walker's claim that an unidentified representative of the unidentified Asian-based customer

15  stated in June 2006 that an unidentified representative of Cree had sent the customer a

16  warning letter asserting four patents directed to LED technologies and threatening that the

17  Asian-based customer's lighting products infringed those patents.

18       Defendants note that Walker concedes that BridgeLux was never provided with a

19  copy of the letter and was never able to verify the exact contents of Cree's purportedly

20  threatening comments.  Defendants assert that Walker's claims are based on an out-of-

21  court statement by an unidentified representative of an unidentified Asian-based customer,

22  which in turn was based on an out-of-court statement (the letter) by an unidentified

23  representative of Cree.  Defendants contend that, at best, this is double hearsay, although

24  they also note that there is no way of knowing how many people the information about the

25  letter passed through before reaching Walker.

26       Defendants also contend that Walker's statements are impermissibly vague about

27  the source of his information and when he became aware of it.  Defendants argue that the

28  "evidence" provided by BridgeLux is inadmissible, and as such, cannot be used to establish

United States District Court
For the Northern District of California

1   that the court has subject matter jurisdiction because it does not constitute proof that Cree

2   made actual threats of suit.

3        Defendants argue further that even if the statements in the Walker declaration were

4   admissible and reliable, they would still not constitute evidence sufficient to show the

5   existence of an actual controversy.  They note that BridgeLux provides no evidence

6   showing that either Cree or BU has ever sued anyone on these two patents; that either

7   Cree or BU has ever threatened BridgeLux with suit; that the unidentified Cree

8   representative at the trade show specifically alleged infringement of either the '175 or '703

9   patents, ever mentioned BridgeLux, or appeared to know whether the unidentified Asian

10  customer's products contained BridgeLux chips; or that the letter supposedly sent by Cree

11  to the unidentified Asian customer ever mentioned BridgeLux.

12       The court finds that BridgeLux has not met its burden of providing admissible

13  evidence of an actual and imminent injury caused by Cree and BU that can be redressed

14  by judicial relief, and that is of "sufficient immediacy and reality to warrant the issuance of a

15  declaratory judgment."

16       It is undisputed that neither defendant had filed any lawsuit alleging infringement of

17  the '175 or '703 patents, and that neither defendant has ever accused BridgeLux of

18  infringing the patents.  The statements in the Walker declaration are hearsay or double

19  hearsay, and cannot be admitted into evidence to support BridgeLux's claim that an "actual

20  controversy" existed with regard to the '175 or '703 patents at the time the present action

21  was filed.

22       Moreover, even if the statements in the Walker declaration were not hearsay, they

23  are not sufficiently "definite and concrete" to warrant a conclusion that defendants had

24  inflicted an "actual and imminent injury" on BridgeLux.  There is no indication that anyone

25  from Cree ever specifically identified BridgeLux as having infringed the '175 or '703

26  patents, even in complaints to third parties.  The fact that Cree stated publicly in press

27  releases or at industry meetings that it would defend its patents is unremarkable.  The

28  same could be said of many patent-holders.

**CONCLUSION**

In accordance with the foregoing, the court DENIES the motion to dismiss the first through fourth causes of action, seeking a declaratory judgment of noninfringement and invalidity involving the '236 and '738 patents; and GRANTS the motion to dismiss the fifth through eighth causes of action, seeking a declaratory judgment of noninfringement as to the '175, '703, '056, and '036 patents.

The court will conduct a case management conference in this case on Thursday, August 16, 2007, at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: July 9, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California

14